JOSEPH H. TOMPKINS v. C. ELDEN JOHNSON ET AL.

*Taxes—Certificate of officer—Evidence—Return of marshal—Sale.*

1. *Statutory* certificates of taxing officers cannot be contradicted in *collateral* proceedings. *Blanchard v. Powers,* 42 Mich. 619; *Gamble v. East Saginaw,* 43 Id. 367.

2. A return by the marshal of the city of Grand Rapids of his inability to find any personal property in the possession of the person chargeable with the payment of taxes, out of which to collect the same, is a *condition precedent* to a valid sale of the land upon which said taxes are assessed, and in the absence of such return the existence of such personal property may be shown to defeat such sale.

3. The validity of the provision of the charter of the city of Grand Rapids requiring the marshal to levy upon *any* personal property found *on the premises* assessed, to satisfy such assessment, is questioned, but not decided.

Appeal from superior court of Grand Rapids. (Burlingame, J.) Argued April 4, 1889. Decided June 14, 1889.

Bill to cancel a tax-deed on payment of purchase money, etc. Decree reversed, and one entered directing the cancellation of the deed upon payment of the amount paid upon the sale, with interest, and in default said deed to stand confirmed. The facts are stated in the opinion.

*J. H. Tompkins*, in *pro. per.*, for complainant.

*John S. Lawrence*, for defendant Johnson.

*James W. Ransom*, for defendant Belknap.

CHAMPLIN, J. The bill of complaint states that Joseph H. Tompkins is the owner of a parcel of land in the city of Grand Rapids, bounded as follows:

" Beginning on the south line of Leonard street, fifty feet east from the east line of Turner street; thence east, along the south line of Leonard street, one hundred feet; thence south, parallel with Turner street, ninety-six feet, to the south line of lot nine, J. F. Chubb's addition; thence west, along the south line of lots nine and twelve of said addition; thence north ninety-six feet to the place of beginning; being a part of lots 9, 11, and 12 of said Chubb's addition."

The city of Grand Rapids assessed these premises to defray the expenses of constructing a sewer in Leonard street.

The above boundaries include 65 feet in width off the east end of lots 11 and 12, and 35 feet off the west end of lot 9, of J. F. Chubb's addition. The premises were assessed in three separate parcels. The parcel on lot 11 is designated in the record before us as "A;" that on lot 12 as "B;" and that on lot 9 as "C." No question is made as to the regularity of the assessments or sale, so far as the proceedings by the officials of the city are concerned.

The charter of the city declares that the assessment shall be a lien upon the premises until the same is paid or satisfied, and that deeds on sale of real estate for delinquent assess-

ments, executed and acknowledged as prescribed, shall vest the fee of the land in the purchaser, and shall be deemed and taken to be *prima facie* evidence of the existence and regularity of all such prior proceedings as might otherwise be required to be proven in order to establish a title in the purchaser.

Any land sold for assessments may be redeemed within one year after the date of sale by paying to the city clerk the amount for which it was sold, with interest on the same from the date of sale to the time of redemption at the rate of 25 per centum per annum.

The assessment laid upon the above parcels of land was not paid, and they were duly advertised, and sold on the ninth day of February, 1885. Parcel " C " was sold to the defendant Johnson. This parcel was not redeemed, and a deed was duly executed and delivered to Johnson, who went into the possession thereof.

Tompkins claims in his bill that he failed to redeem through the fault and neglect of defendant Belknap, who was city clerk; that on the fourth of December, 1885, he applied to the defendant Belknap, and obtained from him a certificate showing what liens were upon his premises on account of said assessment, and was furnished by said Belknap with a certificate, signed by him as city clerk, which did not show that there was any lien upon parcel " C," which certificate contained a statement as follows:

" I do not find any other liens on the above parcels of land."

He alleges that he relied upon this statement, and made no further investigation, and that in March, 1886, he had an opportunity to sell the land, when he discovered the tax deed to Johnson; that he tendered Johnson $25, and requested him to convey to him, but he refused. He alleges that the deed is a cloud upon his title. He states that he is ready an l desirous to remove said cloud, and repay to said Johnson th.

amount of money he has justly and lawfully paid to the city in the purchase of said parcel, and the legal cos's of the same, with lawful interest thereupon; and he prays that the deed to Johnson may be canceled and set aside upon the repayment to him of said money, costs, and lawful interest, and for further and other relief.

The bill also contains charges that there was sufficient personal property on the premises to satisfy the assessment, and also that he had personal property in his possession subject to seizure and sufficient to satisfy the assessment; also that the premises were wrongly described upon the assessment roll, and that the return of the marshal was illegal and incorrect, and not in accordance with the law and facts of the case; and also that the sale and deed to Johnson were illegal.

Concerning these several charges no specific relief is prayed other than that above stated.

We think the complainant has utterly failed to establish the statements of his bill with reference to his being misled by the certificate obtained from the city clerk. The testimony shows that he knew of the assessment while the roll was in the marshal's hands for collection, and it shows beyond a doubt that at the time he obtained the certificate he knew of the lien upon parcel "C;" that his attention was called to it at that time; that he requested the clerk not to include this parcel in the certificate; that the clerk made out a redemption certificate dated that day, but Tompkins did not redeem it that day, but stated that he would in a few days, and the clerk promised to hold it for him a few days, and, having confidence that Tompkins would in a few days call and redeem it, gave to Tompkins, at his request, the certificate showing the parcel clear of the lien. This is fully established by the testimony of Uhrbrock and Belknap, who produces the redemption certificate of this parcel which he drew up at that time.

The testimony shows that one Seigel had some wood piled upon parcel " C," but that Tompkins had no ownership of nor interest in the wood. Seigel was not a tenant of Tompkins, but had obtained permission to pile wood there from Uhrbrock, who had Tompkins' permission to occupy the premises.

Mr. Tompkins also testified that he had some personal property consisting of an office-desk, chairs, and books in his office, and also that the marshal never called upon him, or demanded payment of the assessment.

The charter of the city provides that the common council may authorize the mayor to attach his warrant to the assessment roll, directing the marshal to collect such assessments within the time to be fixed by the council, " and thereupon it shall be the duty of the marshal, and he is hereby given full power and authority, to levy and collect the same by distress and sale of any personal property upon such premises or in the possession of the persons chargeable with such assessment, and in case sufficient personal property cannot be found whereon to levy for the satisfaction of such assessment" the marshal within five days pay over the money collected, and make a report in writing, certified by him, to the clerk, of the sums unpaid, and for the satisfaction of which he was unable to find personal property, with a description of the premises on which the same was assessed. Section 28, tit. 6, of the charter reads as follows:

"The common council may, by an order entered in their minutes, at any time direct the marshal that on the return of his roll, or on any roll already returned by him, he shall give to the city clerk a list of the real estate upon which the assessments have not been paid or collected, and state to whom each parcel of said real estate was assessed, or that the same was assessed to a person 'unknown,' and describe said real estate, and give the amount of tax, together with the percentage added by the common council upon each parcel, and the city marshal shall in all respects comply with the same, and he

shall annex thereto a certificate, substantially in the following form:

"'I hereby certify that the above list contains a true and accurate statement of each parcel of real estate, and the assessment and percentage thereon remaining unpaid, and the names of persons to whom each parcel was assessed; and I further certify that I have been unable to find any personal property upon any of the parcels above described, in the possession of the person or persons chargeable with said assessment, out of which to levy and collect the same, or any part thereof.'"

In this case the return of the marshal was in the exact language contained in the form given above.

The defendants claim that it cannot be disputed in this collateral proceeding between Mr. Tompkins and the purchaser at the sale.

It has been decided in this State that certificates of taxing officers, required by the statute to be made by them, cannot be contradicted in a collateral proceeding. *Blanchard v. Powers,* 42 Mich. 619 (4 N. W. Rep. 542); *Gamble v. East Saginaw,* 43 Id. 367 (5 N. W. Rep. 416).

But the testimony in this case showing that Mr. Seigel had personal property on parcel "C," and also that Mr. Tompkins had personal property in his possession in his office, does not contradict the marshal's certificate. Had the certificate conformed to the evident design of the statute, it would have been indisputable in this proceeding. The statute declares it to be the duty of the marshal to—

"Levy and collect the same by distress and sale of any personal property upon such premises, *or* in the possess on of the persons chargeable with said assessment." Section 10, tit. 6.

And it is only in case sufficient personal property cannot be found whereon to levy that he is authorized to return the land as delinquent. Section 10 and section 28 of this title must be construed together.

It was never designed that land could be returned as delinquent, and sold, if the person against whom it was assessed

had personal property in his possession within the jurisdiction of the marshal out of which he could levy and collect the assessment.    The marshal must perform his duty in this respect before he is authorized to return the land.

In the form given, which must be substantially followed, the most casual reading in connection with section 10 will show that the word "or" is omitted after the word "described" in the last clause, and that by inserting the word "or" it will correspond with the duty required of the marshal by section 10, and make sense of the certificate, which without it is nonsense, and would authorize the marshal to return as delinquent any real estate upon which the person chargeable with the assessment did not happen to have personal property in his possession upon the premises assessed, although he might have a store full of personal property upon the adjoining premises.

Unless the return of the marshal shows that he was unable to find any personal property in the possession of the person chargeable with the assessment, the fact that there was personal property in possession of such person out of which it might have been levied and collected may be shown to defeat a title acquired on a sale of the land as delinquent.    Such fact is jurisdictional, and it lies at the foundation of the authority of the ministerial officer to sell, under the charter of the city.

I question the authority of the marshal to levy upon Mr. Seigel's property to pay Mr. Tompkin's assessment, but, as it is not necessary to decide this point, we shall pass it, and base our decision upon the fact which is made to appear, that Mr. Tompkins had sufficient personal property in his possession out of which the marshal might have collected the assessment, and that the return of the marshal does not negative this fact.    We shall therefore reverse the decree of the court below, and a decree will be entered directing the deed of Mr. Johnson to be canceled upon the payment to him, or to the

clerk of the superior court for him, within 30 days after this cause is remanded to that court, the amount which he paid upon the sale of said parcel, with interest at the legal rate, and in default of such payment said deed to stand as confirmed.

There was no reason for making defendant Belknap a party to this suit, and the bill will be dismissed as to him, with costs of both courts.

Neither the complainant nor the defendant Johnson will recover costs against the other, but each will pay his own costs.

The other Justices concurred.